[Cite as *State v. Henry*, 2019-Ohio-1256.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2018-CA-72 & |
| | : | 2018-CA-88 |
| v. | : | |
| | : | Trial Court Case Nos. 1999-CR-296 & |
| ANJUAN HENRY | : | 1999-CR-584 |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of April, 2019.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

ANJUAN HENRY, #401-154, P.O. Box 69, London, Ohio 43140
        Defendant-Appellant, Pro Se

. . . . . . . . . . . .

HALL, J.

{¶ 1} In two consolidated cases, Anjuan Henry appeals pro se from the trial court's denial of a motion for a new trial in the first case and the denial of a petition for post-conviction relief in the second one.

{¶ 2} Henry advances three assignments of error. First, in Clark App. No. 2018-CA-72, his appeal of a drug-possession case, he contends the trial court erred in denying his new-trial motion. Second, he claims the trial court erred in failing to ask whether he wanted counsel appointed to assist him with the evidentiary hearing on the new-trial motion. Third, in Clark App. No. 2018-CA-88, he asserts that the trial court erred in denying his petition for post-conviction relief without a hearing.[1]

**Background for three cases - Henry sent to prison beginning September 2000.**

{¶ 3} Henry's first trial began on May 15, 2000. The jury found Henry guilty in two consolidated cases. The first involved convictions on charges of possession of more than 100 grams of crack cocaine with a major-drug-offender specification, Clark C.P. No. 99-CR-296, relating to an event on June 3, 1999. The second involved two counts of drug trafficking, Clark C.P. No. 99-CR-584, relating to events on October 20 and 22, 1999. The court was unable to promptly sentence Henry because he went on the run. He was later arrested and sentenced to prison for both cases on September 22, 2000. On direct

---

[1] We note that the State of Ohio filed a combined "Brief of Appellee, The State of Ohio" that is file stamped December 27, 2018 and correctly docketed in each of these consolidated Case Nos. 18-CA-0072 and 18-CA-0088. However, those briefs incorrectly list the appellate case numbers as 17-CA-0072 and 17-CA-0088. We conclude the case numbers are a typographical error and accept the briefs as filed and docketed.

appeal, in February 2002, this court determined that Henry should have been granted a requested continuance on the day of the trial because he had been shot in the neck the day before, hospitalized and released, but was still recuperating. We further determined that the cases should not have been tried together. *State v. Henry*, 2d Dist. Clark No. 2000-CA-80, 2002-Ohio-391. The convictions were reversed, and the matter was remanded. However, Henry remained in prison after the reversals because, in the interim, he was convicted after a plea in Clark C.P. No. 00-CR-429, an unrelated possession of crack cocaine conviction, for which he remained in prison serving a sentence of five years, which began in June 2001.

{¶ 4} Thereafter, while still in prison, in June 2003 Henry was re-tried in Case No. 99-CR-296, the possession with major drug offender specification case. He was convicted on the possession charge with the specification and sentenced to prison for an aggregate of seventeen years (ten for possession consecutive to seven for the specification), which was ordered to be served consecutively to the five-year sentence in Case No. 00-CR-429 (the unrelated possession of crack cocaine).

{¶ 5} Later, Henry was again returned to Clark County for the trafficking case, Case No. 99-CR-584, where he pled no contest to the drug-trafficking charges in November 2003 under an agreement that his sentence would be concurrent with the 17-year sentence he was serving in Case No. 99-CR-296. The trial court found him guilty and imposed two five-year prison terms, consecutive to each other but concurrent with the 17-year sentence he was serving for possession in Case No. 99-CR-296.

{¶ 6} The convictions and sentences in Case Nos. 99-CR-296 and 99-CR-584 were appealed, consolidated, and affirmed on direct appeal in *State v. Henry*, 2d Dist.

Clark Nos. 2003-CA-47 & 2003-CA-88, 2005-Ohio-4512, although it does not appear that there were any errors assigned for the no-contest pleas to the trafficking charges.

**2016 Motion for leave and for a new trial in Case No. 99-CR-296,**

**and Petition for post-conviction relief in Case No. 99-CR 584**

{¶ 7} In April 2016, Henry moved for leave to file a delayed new-trial motion in the Case No. 99-CR-296 drug-possession case. His motion included affidavits from himself and from a person he indicated was his "ex-fiancée," averring that his attorney had been having an affair with his "ex-fiancée" during his June 2003 trial, ostensibly while she still was his fiancée, although he had been in prison since September 2000. In May 2016, Henry submitted a supplemental affidavit averring that his "ex-fiancée" did not tell him about the affair until February 2016. Before any ruling on his motion for leave, in June 2016, Henry also filed his motion for a new trial alleging ineffective assistance of counsel due to a conflict of interest created by the affair. The trial court denied both motions in September 2016 and November 2016, and Henry appealed. On review, we specifically analyzed Henry's filings in Case No. 99-CR-296, the April 5, 2016 "Crim. Rule 33(B) Motion For Leave To File A Delayed Motion For A New Trial" and the June 14, 2016 "Criminal Rule 33(A)(1) New Trial Motion," as Crim.R. 33 pleadings, as opposed to R.C. 2953.21 petitions for post-conviction relief. In our opinion, we reversed and remanded, noting that "[t]he trial court overruled Henry's motion for leave without providing reasoning for doing so." *State v. Henry*, 2017-Ohio-7426, 96 N.E.3d 1123, ¶ 20 (2d Dist.). Our remand could have been clearer as to whether a hearing on Henry's filings was required. We said: "[B]ased on the record before us, we conclude that the trial court abused its discretion in overruling Henry's motion for leave without a hearing. A

remand is necessary for the trial court to consider, in the first instance, whether the affidavits submitted by Henry in support of his motion for leave credibly establish, by clear and convincing proof, that he was unavoidably prevented from discovering the evidence of the affair between his trial counsel and his ex-fiancé." *Id.*

{¶ 8} Also in April 2016, Henry separately filed a delayed petition for post-conviction relief in the drug-trafficking case, Case No. 1999-CR-584.[2] He again relied on the affidavits from himself and his ex-fiancée about an affair between his attorney and his ex-fiancée while his attorney was representing him. The trial court denied the petition in November 2016, and Henry appealed. This court initially stayed that appeal and then, on the same date we reversed the above possession case, by separate opinion, we reversed and remanded this trafficking case primarily on the basis that the trial court incorrectly had treated the Case No. 99-CR-584 petition as a Crim.R. 32.1 motion to withdraw a plea, instead of as an R.C. 2953.21 post-conviction relief petition; we also found that the trial court had failed to provide sufficient findings of fact and conclusions of law, which, unless a petition is dismissed as untimely, are required for ruling on an R.C. 2953.21 petition. In our opinion, we specifically determined: "Under the particular facts before us, we conclude that the trial court should have reviewed Henry's April 5, 2016 filing as a petition for post-conviction relief as opposed to dismissing the petition solely based on the failure to meet the requirements to withdraw a plea pursuant to Crim.R. 32.1." *State v. Henry*, 2017-Ohio-7427, 96 N.E.3d 1139, ¶ 16 (2d Dist.). Our remand in

---

[2] A petition for post-conviction relief, rather than a motion for a new trial, is more applicable in this trafficking case because Henry's convictions in Case No. 99-CR-584 were by way of no-contest pleas, rather than by way of the trial, as in the possession case, Case No. 99-CR-296.

the trafficking case indicated that the court should first exercise its discretion to evaluate the credibility of Henry's post-conviction filings, as permitted in R.C. 2953.21 proceedings, and further directed the trial court to proceed to issue a ruling in accordance with Crim.R. 35.

**Proceedings after the 2017 remands.**

{¶ 9} On remand of the possession case, the trial court held a February 15, 2018 hearing solely to determine whether Henry had been unavoidably prevented from discovering the evidence supporting his new-trial motion sooner.[3] The only witness called at the hearing was Henry's ex-fiancée, Erica Bibbs. At the conclusion of the hearing, the trial court ruled orally from the bench and sustained Henry's motion for leave to file a delayed new-trial motion. (Feb. 15, 2018 Transcript at 46-47).

{¶ 10} The trial court then held an April 23, 2018 evidentiary hearing on the merits of Henry's new-trial motion. Henry appeared at the hearing pro se, but he declined to call any witnesses or to present any evidence. (April 23, 2018 Transcript at 3-4). The trial court indicated that it would review a pre-hearing memorandum Henry had submitted as well as any supplemental briefing the parties wished to file. (*Id.* at 4). Thereafter, the trial court filed a May 29, 2018 entry overruling Henry's motion for a new trial. (Doc. #17 in Case No. 99-CR-296). It found "a lack of credibility" in the affidavits and Bibbs' testimony submitted in connection with Henry's motion for leave, contradictions in her assertion that she always considered herself Henry's fiancée during their on-and-off-again relationship,

---

[3] A transcript of the hearing is captioned "Motion for Post-Conviction Relief." But the hearing actually addressed only whether Henry had been unavoidably prevented from discovering evidence of the alleged affair to support his motion for leave to file a new-trial motion. (*See* Feb. 15, 2018 Transcript at 7-9, 46-47).

and that she had a strong interest in the success of his new trial effort. The trial court also noted Henry's failure to present any evidence at the merits hearing. Finally, the trial court held that the affidavits and Bibbs' testimony failed to meet Henry's burden to show there was an irregularity by way of conflict of interest and that he failed to show that any perceived irregularity had any effect on the effective assistance of counsel, a fair trial, or any other substantial right. (*Id.* at 2-4).

{¶ 11} With regard to Henry's separate motion for post-conviction relief in the drug-trafficking case, Case No. 99-CR-584, the trial court filed a June 19, 2018 entry reaching essentially the same conclusions. (Doc. #2 in Case No. 99-CR-584). After considering the affidavits and testimony from Bibbs cited above as well as Henry's written arguments in support of post-conviction relief, the trial court found a "lack of credibility" in Henry's evidence. The trial court also found that he had failed to meet his burden to show there was such a denial or infringement of his rights as to render the judgment against him in the drug-trafficking case void or voidable under the Ohio or United States Constitution. With regard to the alleged affair and possible ineffective assistance of counsel, the trial court noted that Henry's attorney had negotiated a favorable plea resulting in an aggregate ten-year sentence to be served concurrently with the longer sentence in the drug-possession case, meaning that Henry would serve no additional prison time as a result of the trafficking convictions. (*Id.* at 1-3). Parenthetically, the 10-year sentence in that case, running concurrent with the sentence in Case No. 99-CR-296, now would be completed.

**The current appeals.**

**A. Right to counsel**

{¶ 12} On appeal, Henry challenges the trial court's denial of his new-trial motion in the drug-possession case and its denial of post-conviction relief in the drug-trafficking case. He also challenges the trial court's failure to ask whether he wanted counsel appointed to assist him with the merits hearing on his new-trial motion. Understandably, Henry sometimes conflates the legal issues in the Crim.R. 33 motion for a new trial case and the R. C. 2953.21 post-conviction relief case. For purposes of our analysis, we turn first to the issue of appointed counsel.

{¶ 13} Henry's second assignment of error states: "The trial court erred in failing to inquire as to whether appellant wanted to avail himself of his Sixth Amendment right to the appointment of counsel at a critical stage of the proceedings." His argument refers to the trial court's April 23, 2018 hearing on his motion for a new trial. The State correctly notes, however, that Henry lacked a *constitutional* right to counsel in connection with his new-trial motion. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (recognizing that the constitutional right to appointed counsel extends only to a first appeal of right). Therefore, the trial court did not err in failing to inquire as to whether he wanted to avail himself of any Sixth Amendment right to counsel.

{¶ 14} In a related argument under his second assignment of error, Henry asserts that "[i]f an evidentiary hearing is ordered in a postconviction proceeding, the right to counsel exists under Ohio law." (Appellant's brief at 12). For this proposition, he cites "*State v. Robison* 1989 Ohio App. Lexis 2655" in the narrative and table of authorities of his brief. More accurately, the case is found at *State v. Robison*, 4th Dist. Pickaway No. 88 CA 15, 1989 WL 72802 (June 19, 1989). In that case, the court determined that there is no constitutional right to counsel for processing an R.C. 2953.21 petition. Only if an

evidentiary hearing is ordered for an R.C 2953.21 petition does a petitioner have a statutory right to have the public defender review the case, but the public defender is only required to represent the petitioner if the public defender "is first satisfied there is arguable merit to the proceeding." *See* R.C. 120.16(D). This right, inapplicable in *Robison* itself because there was no hearing, was later adopted by the Ohio Supreme Court in *State v. Crowder*, 60 Ohio St.3d 151, 152, 573 N.E. 2d 652 (1991). *Crowder* also engrafted an implicit right to have the trial court notify the public defender if an R.C. 2953.21 merit hearing is ordered. *Id.* at 153. But in doing so, the *Crowder* court reiterated that "an indigent petitioner has neither a state nor a federal constitutional right to be represented by an attorney in a postconviction proceeding." *Id.* at 151. The right to have the public defender review a case, and perhaps provide representation, when a merits hearing has been set for a R.C 2953.21 petition is, therefore, a case-law interpretation of a statutory procedure, not a constitutional right.

{¶ 15} Henry's own argument that he had a right to counsel, however, is a constitutional one. He refers to the Crim.R. 33 hearing as " 'a critical stage of the proceedings' for Sixth Amendment purposes." (Brief at 13). Because there is no constitutional right to counsel for a new trial motion or a hearing thereon, and because we have previously determined that Henry's pleading in the possession case was a Crim.R. 33 proceeding, he had no constitutional right to counsel in the motion for a new trial hearing. And, he had no *Crowder* right to notice to the public defender for the R.C. 2953.21 petition in his trafficking case because the court decided that case without a hearing. The *Crowder* right to notice only applies to R.C. 2953.21 proceedings and only if an evidentiary hearing is ordered.

{¶ 16} Although *Crowder* involved statutory interpretation and a court-engrafted public defender notice related to a petition for post-conviction relief hearing, and although Henry does not make the following specific argument, we have considered whether the statutory right and case-created implicit requirement of notice to the public defender should apply to a Crim.R. 33 hearing. We note that R.C. 120.16(D), upon which the *Crowder* right is based, addresses the public defender's involvement in "any * * * postconviction remedy." An argument could be made that Henry's Crim.R. 33 remedy is broadly a postconviction remedy. However, there are multiple reasons why we conclude that *Crowder* does not apply here.

{¶ 17} First, by the express terms of the *Crowder* decision, it only applies to R.C. 2953.21 proceedings. "R.C. 120.16(A)(1) and (D) implicitly require the trial court, upon concluding that the petitioner *in a postconviction proceeding is entitled to an evidentiary hearing pursuant to R.C. 2953.21(C) and (E),* to promptly notify the public defender of the pending hearing." (Emphasis added.) *Crowder* at paragraph two of the syllabus.

{¶ 18} Second, *Crowder* was decided more than 27 years ago, and since that time there have been numerous cases recognizing that a right to counsel only applies to the first appeal as of right and no further. In those years, we have found no case that applies the *Crowder* notice right to a Crim.R. 33 motion for a new trial and only one case that applied the *Crowder* right to a criminal motion, that being a Crim.R. 32.1 motion to withdraw a plea.[4] In *State v. Buchanan*, 10th Dist. Franklin No. 96APA11-1527, 1997 WL

---

[4] In *State v. McNeal*, 8th Dist. Cuyahoga No. 82793, 2004-Ohio-50, a post-sentence Crim.R. 32.1 motion had been correctly denied without a hearing. Despite the conclusion that a hearing was not required, the court of appeals opined in fn. 12 that a Crim.R. 32.1 motion is a postconviction remedy under *Crowder* and R.C. 120.16. Because the case did not involve an evidentiary hearing, this footnote is obvious dicta, unnecessary and

325954, *3-4 (June 10, 1997), Buchanan entered pleas to two counts of rape in February 1996. In late March 1996, he filed a " 'motion for court appointed counsel to appeal.' In this document, he alleged that he had a mental illness and had been heavily medicated when he entered his pleas; thus, 'he did not understand what he was doing' when he entered his guilty pleas. In addition, Mr. Buchanan claimed that trial counsel advised him to mislead the court about his drug use and mental condition." *Id.* at * 1. Two months later he filed, pro se, a motion to withdraw his pleas under Crim.R. 32.1. The court scheduled the motion for an evidentiary hearing and did not address the request for counsel. The court of appeals observed "[o]ur review of the transcript reveals Mr. Buchanan's undeniable lack of ability to represent himself under these circumstances." *Id.* at *3. Finally, the court of appeals concluded:

> In the motion filed by Mr. Buchanan, he was seeking to vacate his plea under the terms of Crim.R. 32.1. However, he also was seeking postconviction relief to the extent that he was alleging denial of his right to effective assistance of counsel. As a result, once the trial court found sufficient merit in the motion/petition to warrant an evidentiary hearing, the trial court needed to address Mr. Buchanan's right to counsel, especially after Mr. Buchanan requested the assistance of counsel for the hearing.

(Emphasis added.) *Id.* Under these circumstances, the *Buchanan* court reversed and remanded with instructions for the trial court to appoint counsel to represent Buchanan at the "post conviction" hearing.

{¶ 19} Here we had determined in the previous appeal that Henry's new trial

---

extraneous to the decision.

motion in Case No. 99-CR-296 was a Crim.R. 33 motion, not a Crim.R. 32.1 motion, not an R.C. 2953.21 proceeding, and not some hybrid proceeding as suggested in *Buchanan.* Henry argues that the trial court erred by failing to sua sponte inquire whether he wanted to proceed with appointed counsel. Henry does not contend that he requested appointment of counsel at the April 23, 2018 hearing. There also is no indication that Henry was affected by mental illness or heavily medicated. He adroitly has handled multiple appeals, some of which were successful, and he has filed in this court several applications for writs of mandamus over the years to get the trial court to rule on motions he filed. Finally, the *Buchanan* motion was filed only a short time after the contested plea as opposed to Henry's motion filed 15 years after the beginning of the events about which he complains. Given all these differences, we conclude that the *Buchanan* disposition does not apply to resolution of Henry's Crim.R. 33 hearing.

{¶ 20} The second assignment of error is overruled.

**The trial court did not abuse its discretion overruling the Motion for a new trial.**

{¶ 21} In his first assignment of error, Henry challenges the trial court's denial of his new-trial motion.

{¶ 22} "A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion." *State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, ¶ 31, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus; *State v. Matthews*, 81 Ohio St.3d 375, 378, 691 N.E.2d 1041 (1998). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597

(1990)." *State v. DeVaughns*, 2018-Ohio-1421, 110 N.E.3d 922, ¶ 15 (2d Dist.).

{¶ 23} In support of his motion for leave to file a motion for a new trial, Henry submitted his own affidavit and his own supplemental affidavit, which essentially stated his "ex-fiancée" Erica Bibbs informed him in 2016 that she had an affair with his trial attorney "leading up to and during my June 2003 jury trial." He also submitted an affidavit from Erica Bibbs which stated: "I Erica Bibbs, aver and attest to the following * * * before and during my ex fiancé and my children's father, (Anjuan Henry), June 2003 jury trial, I was engaged in a romantic relationship with his attorney."

{¶ 24} On remand, the trial court conducted a hearing on February 15, 2018 confined to the issue of whether Henry had been unavoidably prevented from discovering the facts upon which his motion for a new trial was based, and therefore whether he should be granted leave to file the new trial motion. Erica Bibbs was the only witness Henry called at that hearing. She testified that she had a romantic, intimate relationship with Henry's 2003 trial counsel, Daniel L. O'Brien, before and during the 2003 trial. (Transcript, February 15, 2018, at 12.) She said she was engaged to Henry at the time. *Id.* She was engaged to Henry twice, the first time in 1999 during Henry's first trial and then "we lost contact for a while" and then got reengaged "while he was locked up again." (*Id.* at 16). The reengagement was "probably 2002 maybe, give or take," while he was in prison. (*Id.*) Bibbs said that he did not give her a ring for the reengagement but "we talked about it over the phone." (*Id.* at 17). (For context, as previously noted, Henry has continuously been in prison, except when transported in custody for various court appearances, since September 2000.) Before that he was "on the run." (*Id.* at 18).

{¶ 25} Bibbs also testified that the relationship with the attorney started in the

"middle of 2000," (*Id.* at 17), "like August or something like that of 2000." (*Id.* at 28). This was about the time that Henry was on the run, then he was caught and then went to prison. Bibbs could not put a number on the times she and the attorney saw each other stating "20,30,40,50" times. (*Id.* at 19). They went to restaurants and hotels but she could only name one restaurant, where she met the attorney's brother, and one hotel where they went in 2000. (*Id.* 20-21). She recalled: "From 2000 to 2005 we were together about, I don't know endless amounts of time." (*Id.* at 20).

{¶ 26} Henry is the father of two of Bibbs' children, a boy born in 1998 and a girl born in 1999. (*Id.* at 28). Bibbs said they first became engaged in 1999. (*Id.* at 27). When asked when this engagement ended, she said, "I wasn't sure. We still were communicating." (*Id.*). And when asked if she believed the engagement was over when the relationship with the attorney began, she said, "Honestly, I didn't think about it." (*Id.* at 29).

{¶ 27} During the time Henry was in prison, Bibbs also had romantic relationships with two other men. The first began around the "end of 2003, 2004" and was "on and off." (*Id.* at 43). She had a child from that relationship in early August 2004. (*Id.* at 44). That relationship lasted until 2008. (*Id.* at 43). The second other relationship was from 2009 until 2012. (*Id.* at 44).

{¶ 28} During all the time Henry was in prison, Bibbs never went to visit him. (*Id.* at 36). She never took the children to visit him. (*Id.*). She would provide him with commissary money books and pictures of the children. *(Id.* at 35). Their communication was by mail for about the first half of his sentence and then some phone calls. (*Id.* at 36-37).

{¶ 29} Finally, she said that the attorney would sometimes state that he needed more money for Henry's representation, but he never got any more money. (*Id.* at 38-39). The attorney never said why he was still representing Henry without getting more money. (*Id.*). When asked if she thought that was because she was continuing in a relationship with the attorney, she said, "Honestly, I didn't think about it." (*Id.*).

{¶ 30} Bibbs did not offer any testimony about the attorney's conduct that might have related to representation or deficiency during the June 2003 trial, or for that matter, related to the November 2003 pleas in the trafficking case.

{¶ 31} We observe that if Bibbs' testimony is taken at face value, she was engaged to Henry in 1999, "lost contact" and was reengaged in 2002. The relationship with the attorney, beginning about August 2000, was therefore ongoing before Bibbs was re-engaged in 2002. There was no testimony that Bibbs informed the attorney that she had become reengaged.

{¶ 32} Henry argues he has shown that the attorney had a conflict of interest during the 2003 trial because his attorney was in a romantic relationship with Bibbs and that prejudice is presumed so he does not have to prove the conflict negatively affected the attorney's representation. We disagree.

{¶ 33} As to the romantic relationship with Bibbs, the only evidence about the alleged affair was at the February 15, 2018 hearing when Bibbs was the only witness. At the beginning of that hearing, it was made explicitly clear that the hearing was to address Henry's motion for leave to file a motion for a new trial and whether Henry was unavoidably delayed in the discovery of the evidence that he would use to support the motion for a new trial. It was not a merits hearing on the motion for a new trial. At the

conclusion of the hearing, the trial court ruled that leave to file a motion for a new trial was granted. The April 23, 2018 proceeding was the hearing on the motion for a new trial. Henry did not present any evidence, apparently because he believed, and he now argues, that an attorney's affair with his client's wife during the representation is necessarily a conflict of interest and prejudicial per se.

{¶ 34} Despite the fact that Henry introduced no evidence at the merits hearing, the trial court nonetheless considered the testimony of Bibbs and the affidavits that had been filed. It reasoned: "Having reviewed the affidavits and the testimony of Ms. Bibbs and considering the lack of any further testimony at the hearing on the merits of the defendant's motion for a new trial, the Court finds a lack of credibility in regards to the affidavits and the testimony." (Case No. 99-CR-296, Doc. #17 at 3). The trial court also indicated that it was unclear whether Bibbs was Henry's fiancée at the time of the 2003 trial and that her assertion that she had always been his fiancée was contradicted by her affidavit referring to herself as an ex-fiancée. (*Id.*). The court concluded that the defendant had failed to meet his burden to show that there was an irregularity by way of conflict of interest at his trial. (*Id.* at 3).

{¶ 35} The trial court's preceding conclusion was not unreasonable and was supported by the record. Henry had been in prison since November 2000. Bibbs said she had been engaged to him in 1999 but "lost contact," and claimed that they got re-engaged over the phone sometime in 2002. As of that time, Henry was in prison and would have remained in prison for at least four more years on the unrelated possession conviction regardless of what happened in the two cases now on appeal.[5] As of her 2018 testimony,

---

[5] As noted above, the original convictions in Case Nos. 99-CR-286 and 99-CR-584 were

Bibbs had never visited Henry in prison. Henry did not testify to corroborate any of her testimony. It is apparent that the trial court doubted her credibility. Accordingly, we determine the trial court did not abuse its discretion by determining Henry had not demonstrated a conflict of interest, and this determination alone is enough for us to conclude that the trial court did not err by overruling the motion for a new trial.

{¶ 36} It is Henry's contention that a clandestine affair by his attorney with his fiancée during his trial automatically constituted a conflict of interest and that conflict of interest automatically constituted prejudice. He relies principally on *Disciplinary Counsel v. Owen,* 142 Ohio St.3d 323, 2014-Ohio-4597, 30 N.E.3d 910. Attorney Owen represented Robert Caulley after Caulley confessed to killing his parents. Caulley was charged with two counts of aggravated murder with death-penalty specifications and other charges. Caulley's wife began working on the case in Owen's office. Owen and Caulley's wife began a sexual relationship shortly before and during the trial. The relationship lasted for about a year. *Disciplinary Counsel v. Owen* was a disciplinary case against Owen in which the Supreme Court said that "a lawyer's sexual relationship with the spouse of a current client creates an inherent conflict of interest." *Id.* at ¶ 29. As a result, Owen was found to have violated several disciplinary rules and was suspended from the practice of law for two years.

{¶ 37} Because *Owen* was a disciplinary case, it did not deal with the viability of the client's conviction and the impact, if any, the attorney's relationship with his client's wife had on the trial. And although the *Owen* court said that a sexual relationship with a

reversed and remanded on February 1, 2002. *Henry*, 2d Dist. Clark No. 2000-CA-80, 2002-Ohio-391.

client's wife violated the client's right to effective assistance of counsel, *id.* at ¶ 32, that expression was unnecessary and irrelevant to the disciplinary question of whether Owen violated disciplinary rules by his actions. Therefore, the sentence is dicta. Furthermore, no matter how unethical or repugnant we may view the attorney's alleged conduct, the viability of the client's verdict in the *Owen* case was correctly analyzed in the underlying case regarding Caulley's motion for a new trial, *State v. Caulley*, 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, ¶ 19, *aff'd*, 136 Ohio St.3d 325, 2013-Ohio-3673, 995 N.E.2d 227. In *Caulley*, the Tenth District found an actual conflict of interest where a defendant's attorney had an affair with the defendant's wife while representing the defendant at trial. However, the Tenth District proceeded to consider whether the conflict had adversely affected counsel's performance. *Id.* at ¶ 22-24. "In order to satisfy a claim of ineffective assistance of counsel based on a conflict of interest, a criminal defendant must demonstrate that an actual conflict of interest adversely affected trial counsel's performance. *State v. Alexander*, 10th Dist. No. 05AP-192, 2006-Ohio-1298, ¶ 20, citing *State v. Keith*, 79 Ohio St.3d 514, 535 (1997)." *Id.* Ultimately, the Tenth District found no abuse of discretion in the trial court's determination that counsel's division of loyalties did adversely affect counsel's performance, and that was the basis upon which the new trial was granted. *Id.* In particular though, the Tenth District cited "significant testimony indicating that trial counsel spent substantial time with [the defendant's wife] during the trial when he should have been preparing for trial." *Id.* at ¶ 24.

{¶ 38} In light of the persuasive authority of *Caulley*, we agree that an attorney's sexual relationship with his client's wife during the representation presents an actual conflict of interest, but we also agree that to obtain a new trial a defendant must further

demonstrate that the conflict adversely affected trial counsel's performance. Henry's evidence fails on both fronts. No matter how the on-and-off connection between Henry and Bibbs is construed, and whenever it took place, on this record we fail to see how the described liaison between Bibbs, who for 18 years has never visited Henry in prison and who had multiple intimate partners during the interim, is in the same position as the defendant's wife in *Caulley* with whom his lawyer was having an intimate relationship. So, in addition to the trial court finding Henry did not prove an actual conflict of interest, we determine that the relationship here is insufficient to automatically impose an actual conflict of interest as recognized in *Caulley*. In addition, there is no evidence whatsoever that any relationship between Bibbs and Henry's trial counsel adversely affected trial counsel's performance.

{¶ 39} In his brief, Henry also complains that the trial court's decision overruling the motion for a new trial referred to the evaluation factors set forth in *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). Henry argues that the "*Calhoun* factors do not apply to live testimony." (Brief at 6). But the materials before the court included previously submitted affidavits, testimony from Erica Bibbs presented only at the hearing on the motion for leave to file the new trial, and legal arguments. The trial court stated that "[i]n assessing the credibility *of the affidavits,* the court considered the factors set forth in *State v. Calhoun.*" (Emphasis added). The court also evaluated the credibility of Erica Bibbs' live testimony but did not suggest that evaluation was based on the *Calhoun* factors. We need not address whether some or all of the *Calhoun* factors are also valuable tools to assess live testimony because that is not what happened here. Henry's *Calhoun* argument raises no error.

{¶ 40} Henry also complains that the trial court stated in its *Calhoun*-factor evaluation portion of the decision that "[t]his judge is the same judge who presided over the trial and the plea." Henry says that "Judge Parrott of Union County presided over the trial, not Judge O'Neill." (Brief at 6). Henry has not caused those historical portions of the record to be transmitted for our review. Nevertheless, assuming that Judge Parrott did preside over the July 2003 trial, that does not mean that Judge O'Neill did not preside over the May 2000 jury trial, the November 2003 pleas, or the February 2000 jury trial where Henry was jointly tried with his accomplice, Terrance Martin, which resulted in a hung jury. *State v. Martin*, 2d Dist. Clark No. 2000 CA 77, 2002-Ohio-3301. We do not doubt that Judge O'Neill is thoroughly familiar with the circumstances of this case from the multitude of pleadings, trials, pleas, and appeals spanning almost 20 years. If Judge O'Neil's recollection of the 2003 trial is mistaken, Henry points to no error that resulted from this misstatement.

{¶ 41} The first assignment of error is overruled.

{¶ 42} In his third assignment of error, Henry contends the trial court erred in denying his petition for post-conviction relief in the drug-trafficking case. He argues that his trial counsel should have informed the trial court of a conflict of interest created by the alleged affair. He also asserts that the conflict of interest could not be "waived," that affidavits he submitted were credible, and that his no-contest plea to drug trafficking was invalid because it was tainted by his attorney's conflict of interest.

{¶ 43} Upon review, we find Henry's third assignment of error to be without merit. As a threshold matter, the record does not reflect that the trial court held an evidentiary hearing on Henry's petition for post-conviction relief. The February 15, 2018 and April 23,

2018 transcripts in the record pertained only to the new-trial motion and were filed in the drug-possession case. In its entry denying post-conviction relief, the trial court did briefly mention Bibbs' testimony in connection with the new-trial motion. The fact remains, however, that the trial court's docket does not reflect a hearing on Henry's petition for post-conviction relief. Therefore, we are not confronted with the issue discussed above regarding the *Crowder* notice to the public defender, and Henry makes no such argument. *See State v. Simons*, 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 35 (recognizing that "the trial court is not required to notify the public defender of an indigent petitioner's post-conviction proceedings unless it first concludes that the petitioner is entitled to an evidentiary hearing").

{¶ 44} As for Henry's claims about the credibility of the affidavits he submitted, we see no error in the trial court's ruling even if we assume, arguendo, that Henry's attorney did have an affair with his fiancée while representing him. When addressing the alleged affair and possible ineffective assistance of counsel, the trial court noted that counsel had negotiated a plea resulting in an aggregate ten-year sentence to be served concurrently with a longer sentence in the drug-possession case. The result was that Henry would serve no additional prison time as a result of his trafficking convictions, and that sentence has now expired. In light of this relatively favorable outcome, the trial court held that Henry had failed to make a sufficient showing of a denial or infringement of his rights so as to render his conviction void or voidable under the Ohio or United States Constitution.

{¶ 45} We review a trial court's denial of a post-conviction relief petition without a hearing for an abuse of discretion. *Simons* at ¶ 13. A trial court may dismiss a petition for post-conviction relief without a hearing "where the petition, the supporting affidavits, the

documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, at paragraph two of the syllabus. When a petition alleges ineffective assistance of counsel, the petitioner typically bears the burden to submit documentary evidence containing sufficient operative facts to show deficient performance and prejudice. *State v. Cox*, 2d Dist. Montgomery No. 26136, 2015-Ohio-894, ¶ 8. In the context of an ineffective-assistance claim, ordinarily prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *State v. Wayne*, 2d Dist. Montgomery No. 25243, 2013-Ohio-5060, ¶ 22. Where a defendant does not demonstrate how he was prejudiced by counsel's performance, he fails to establish substantive grounds for relief and his petition for post-conviction relief may be denied without a hearing. *State v. Pianowski*, 2d Dist. Montgomery No. 25369, 2013-Ohio-2764, ¶ 31.

{¶ 46} When an ineffective-assistance claim involves an alleged conflict of interest, the foregoing standards are slightly different. Prejudice will be presumed if an appellant establishes an "actual conflict of interest" provided that it "adversely affected his lawyer's performance." *State v. Keith*, 79 Ohio St.3d 514, 535, 684 N.E.2d 47 (1997), citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *State v. Manross*, 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988). In essence, an actual conflict of interest which causes deficient performance results in the prejudice prong of ineffective assistance being satisfied. The United States Supreme Court addressed this issue in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as follows:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Cf. United States v. Morrison*, 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668, 66 L.Ed.2d 564 (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. *See United States v. Cronic*, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. 466 U.S., at 658, 104 S.Ct., at 2046. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S., at 345-350, 100 S.Ct., at 1716-1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those

circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see*, *e.g.*, Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. *Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan*, supra, 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted). (Emphasis added.) *Id.* at 691-92.

{¶ 47} Here Henry makes no effort to show actual prejudice resulting from trial counsel's performance in connection with his no-contest pleas. He argues that his attorney failed to reveal the alleged affair at the time of his plea, that an actual conflict of interest resulting from the affair could not be waived, and that prejudice was not required to be shown because it is presumed. We disagree.

{¶ 48} We refer again to *State v. Caulley*, as analyzed above. Although the Tenth District found an actual conflict of interest, it necessarily, consistent with *Cuyler v. Sullivan*, still proceeded to consider whether the conflict had adversely affected counsel's performance. *Caulley* at ¶ 22-24. The *Cuyler* and *Caulley* requirement that an adverse

effect on performance must be demonstrated applies to Henry's petition for post-conviction relief just as the requirement applied to the motion for a new trial. Because there is nothing in Henry's petition and attachments that suggests an adverse effect on counsel's performance, Henry has failed to demonstrate prejudice and his petition was correctly denied without a hearing.

{¶ 49} We also reiterate the distinction that Bibbs was not Henry's wife and, whatever she was to Bibbs, we conclude the record does not demonstrate an automatic conflict of interest. And if there was a conflict of interest, it did not automatically result in prejudice. *See, e.g., Barentine v. United States*, 728 F. Supp. 1241, 1252 (W.D.N.C.), *aff'd*, 908 F.2d 968 (4th Cir.1990) (finding "the potential for a conflict of interest" where an attorney had an affair with his client's fiancée or girlfriend while representing the client).

{¶ 50} We further observe that Henry pled no-contest rather than going to trial, and he cites no evidence to suggest that the alleged affair adversely affected his attorney's performance in connection with his plea and sentencing. Therefore, we see no basis for a finding of presumed prejudice even if we were to accept that an actual conflict of interest existed. That being so, the trial court did not err in finding that Henry failed to establish substantive grounds for relief.

{¶ 51} The third assignment of error is overruled.

{¶ 52} Finally, Henry argues near the end of his appellate brief that we should declare his no-contest plea in the drug-trafficking case "involuntary" and that we should dismiss both of the cases discussed above for "want of jurisdiction." Henry provides no factual or legal basis for these requests, and we see none.

**Conclusion**

**{¶ 53}** For the reasons set forth above, we affirm the trial court's denial of Henry's post-conviction relief petition in Case No. 1999-CR-584 (Clark App. No. 2018-CA-88). We also affirm the trial court's denial of Henry's new-trial motion in Case No. 1999-CR-296 (Clark App. No. 2018-CA-72).

. . . . . . . . . . . . .

DONOVAN, J. concurs.

FROELICH, J. concurs:

**{¶ 54}** I would find that a defendant's counsel's undisclosed sexual affair with a spouse or prospective spouse of the then-represented defendant so adversely affects the adversarial system, the attorney-client relationship, and the framework in which a trial proceeds that prejudice need not be shown. However, the record and the trial court's findings in this case do not support a conclusion that such a relationship existed, and I concur with the majority's opinion.

Copies sent to:

Andrew P. Pickering
Anjuan Henry
Hon. Richard J. O'Neill