**[Cite as *State v. Wood*, 2025-Ohio-2170.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-49 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0488 |
| | : | |
| MICHAEL WOOD | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 20, 2025

. . . . . . . . . . .

MICHAEL WOOD, Pro Se Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Michael Wood appeals from a judgment of the Clark County Common Pleas Court that denied his petition for postconviction relief, overruled his motion for leave to file a motion for new trial, and overruled his motion for appointed counsel. For the following reasons, the judgment of the trial court will be affirmed.

## I. Procedural History and Facts

**{¶ 2}** Following a jury trial in August 2022, Wood was convicted on one count of operating a motor vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(b), along with a repeat-offender specification.[1] The charges arose from an April 22, 2021 traffic stop of Wood by Clark County Sheriff's Deputy Brenden McDuffie. For additional underlying facts of the case, see *State v. Wood*, 2023-Ohio-2788 (2d Dist.). Wood was ordered to serve 36 months in prison for the underlying OVI and a consecutive 36 months in prison for the repeat-offender specification. Accordingly, Wood received an aggregate prison sentence of 72 months. The trial court also suspended Wood's driver's license for 10 years and ordered him to pay a $1,350 fine.

**{¶ 3}** Wood filed a timely appeal and raises four assignments of error: (1) the trial court erred in overruling his motion to suppress; (2) the admission of a laboratory report violated the confrontation clause; (3) one of the OVI offenses for which he was charged was unconstitutional; and (4) his conviction was against the manifest weight of the evidence. On August 11, 2023, we overruled all of Wood's assignments of error and affirmed the judgment of the trial court. *Id.* at ¶ 81.

**{¶ 4}** Wood filed an application for reconsideration of our decision, which we denied. *State v. Wood*, 2023-Ohio-3735 (2d Dist.). Wood also filed an application for reopening his direct appeal, arguing that his appellate counsel was ineffective for failing to raise the following additional assignments of error: (1) the trial court abused its discretion in overruling his Crim.R. 29 motion and submitting a prejudicial jury instruction;

---

[1] Wood was found guilty of three counts of OVI and attendant repeat-offender specifications at trial. However, due to merger, he was only convicted and sentenced on one count of OVI and its attendant repeat-offender specification.

(2) trial counsel was ineffective; and (3) there was prosecutorial misconduct. We concluded that Wood had failed to demonstrate that there was a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal and denied Wood's application for reopening.

{¶ 5} On October 19, 2023, Wood filed a motion in the trial court for leave to file a delayed motion for a new trial, claiming that the prosecution had suppressed impeachment evidence related to Deputy McDuffie in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In support of his motion, Wood attached an affidavit stating that he only learned of the newly discovered impeachment evidence in March 2023. Wood also submitted a case information sheet from *Nolan v. Clark Cty. Bd. of Cty. Commrs.*, S.D. Ohio No. 3:21-cv-00330. Wood simultaneously filed a motion for a new trial pursuant to Crim.R. 33.

{¶ 6} On October 23, 2023, Wood filed a petition for postconviction relief along with an affidavit of indigency, an application for a subpoena duces tecum of an April 22, 2022 gas station video, an application for a subpoena duces tecum for electronically-stored information from the body cameras of two of the deputies involved in Wood's arrest, a motion for appointed counsel, a motion to pay the cost of an independent forensic behavior sequence analyst, and a motion to pay the cost of an independent forensic audio and video data analyst and/or independent forensic information technology specialist. Wood's petition argued: (1) the video evidence submitted at trial had been altered; (2) trial counsel was ineffective; (3) the State permitted a witness to give perjured testimony; (4) the State suppressed impeachment evidence; (5) prosecutorial misconduct occurred

during trial; and (6) Wood was actually innocent. Wood filed a second affidavit of indigency along with a separate affidavit attached to the filing collectively identified as Wood's affidavit of indigency.

{¶ 7} On January 4, 2024, Wood filed a motion for summary judgment regarding his petition for postconviction relief. He then filed an amended petition for postconviction relief on January 29, 2024, reasserting that the State had suppressed impeachment evidence. Attached to his amended petition, Wood submitted a letter he had written regarding his driving record, a printout of a Google search, and an affidavit of Wood related to his 2016 convictions and attempted postconviction relief.

{¶ 8} On February 6, 2024, the State filed a response to Wood's motion for leave to file a delayed motion for a new trial and to Wood's motions for appointed counsel and expert assistance.

{¶ 9} On February 9, 2024, Wood filed a second amended petition reasserting his original claims. On February 12, 2024, Wood filed a reply to the State's response to Wood's motion for leave to file a motion for a new trial as well as a "Notice" asking the trial court to disregard the State's untimely filing because it had not first sought leave of court. Wood also filed a response to the State's motion in opposition to his request for appointed counsel and expert assistance.

{¶ 10} On March 7, 2024, the State filed a response to Wood's petition and amended petition for postconviction relief. On March 8, 2024, Wood filed another amended petition for postconviction relief focused on his original sixth claim of actual innocence. On March 13, 2024, Wood filed a motion to strike the State's untimely

response to his petitions for postconviction relief.   On April 26, 2024, Wood filed a motion asking the court to proceed to a hearing on his petition.

{¶ 11} On July 30, 2024, the trial court denied Wood's petition for postconviction relief and overruled Wood's other pending motions.[2]   Wood timely appealed and raises five assignments of error.   We elect to consider the assignments of error out of order for ease of discussion.

## II.   Second and Fourth Assignments of Error: Petition for Postconviction Relief

{¶ 12} Wood's second and fourth assignments of error will be considered together as they both relate to the trial court's denial of his petition for postconviction relief.   The assignments of error state as follows:

> The trial court abused its discretion, failed to render adequate findings of fact/conclusions of law, failed to conduct *Calhoun* analysis to determine the credibility of sworn testimonial statements and erroneously denied post-conviction relief requested *pro se* in violation of Due process of law guaranteed by the Fifth, Sixth and Fourteenth Amendment to the United States Constitution as well as comparable provisions of the Ohio Constitution.

> The trial court abused its discretion, applied incorrect legal standards, and erroneously denied Wood's pro se post-conviction relief

---

[2] Unlike Wood's petition and amended petition, the trial court's entry did not address Wood's second and third amended petitions for postconviction relief filed in February and March 2024, and, therefore, those filings will not be addressed in this opinion.

petition without conducting a hearing in violation of R.C. 2953.21(D), (F), (H) and Due process of law guaranteed by the Fifth, Sixth and Fourteenth Amendment to the United States Constitution as well as comparable provisions of the Ohio Constitution.

{¶ 13} Wood first argues that the trial court erred in denying his petition and failing to provide findings of fact and conclusions of law.   Second, Wood contends that the trial court should have, at a minimum, granted him a hearing.

### a. Applicable Law

{¶ 14} We review the trial court's ruling on a petition for postconviction relief for an abuse of discretion.   *State v. Gondor*, 2006-Ohio-6679, ¶ 45.   "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 15} "Pursuant to R.C. 2953.21(A)(1)(a), a convicted defendant who asserts a denial or infringement of constitutional rights sufficient to render his conviction void or voidable may file a petition asking the court that imposed sentence to vacate the judgment or sentence or to grant other relief."   *State v. Hatton*, 2022-Ohio-3991, ¶ 37.   "[A] postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment."   *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999).   A petition for postconviction relief " 'is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's

criminal conviction.' " *State v. Clark*, 2017-Ohio-120, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, ¶ 37 (10th Dist.).

{¶ 16} When filing a petition for postconviction relief, the petition shall state all grounds for relief claimed and any ground for relief that is not so stated in the petition is deemed waived. R.C. 2953.21(A)(4). The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief. R.C. 2953.21(A)(1)(b). To prevail on a petition for postconviction relief, the petitioner must establish such a denial or infringement of the petitioner's constitutional rights as to render the judgment of conviction void or voidable under the Ohio Constitution or the Constitution of the United States. R.C. 2953.21(A)(1)(a)(i).

{¶ 17} A petitioner is not automatically entitled to a hearing on a petition for postconviction relief. *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), citing *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). Before granting a hearing on a timely-filed petition for postconviction relief, the trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). "In making that determination, the court must consider, in addition to the petition, the supporting affidavits, the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." *State v. Marcum*, 2023-Ohio-4058, ¶ 26 (2d Dist.), citing R.C. 2953.21(D). "The post-conviction relief statute imposes on a petitioner 'the initial burden to submit evidentiary documents containing operative facts sufficient to demonstrate substantive grounds for relief that

merit a hearing.'" *State v. Lenoir*, 2009-Ohio-1275, ¶ 11 (2d Dist.), citing *State v. Gapen*, 2005-Ohio-441, ¶ 21 (2d Dist.). "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *State v. Blanton*, 2022-Ohio-3985, ¶ 24, citing *State v. Milanovich*, 42 Ohio St.2d 46, 50 (1975), and R.C. 2953.21(F). "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *Gapen* at ¶ 21, citing *State v. Moreland*, 2000 WL 5933 (2d Dist. Jan. 7, 2000). "A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review." *State v. Coleman*, 2005-Ohio-3874, ¶ 17 (2d Dist.), citing *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983), and *State v. Vanderpool*, 1999 WL 64238 (2d Dist. Feb. 12, 1999). Furthermore, "[t]he evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial." *State v. Jackson*, 2017-Ohio-2651, ¶ 16 (8th Dist.), citing *State v. Combs*, 100 Ohio App.3d 90, 98 (1st Dist. 1994).

{¶ 18} "Res judicata is applicable in all postconviction relief proceedings." *State v. Szefcyk*, 77 Ohio St.3d 93, 95 (1996). "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v.*

*Perry*, 10 Ohio St.2d 175, 180 (1967). Generally, res judicata does not apply to a claim raised in a petition for postconviction relief that relies on evidence outside the record of the direct criminal proceedings. *State v. Monroe*, 2005-Ohio-5242, ¶ 9 (10th Dist.). However, "simply overcoming the res judicata bar through the introduction of evidence outside the record is not sufficient to entitle the petitioner to a hearing." *Blanton* at ¶ 31. "When the evidence a petitioner relies upon [is] dehors the record that evidence must meet a threshold of cogency." *State v. Hill*, 2005-Ohio-3176, ¶ 8 (2d Dist.), citing *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist. 1995). "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " *Id.*, quoting *Lawson* at 315. A self-serving affidavit filed by a petitioner generally does not meet the minimum level of cogency needed to support a petitioner's postconviction claims. *State v. Clinton*, 2024-Ohio-4720, ¶ 128 (6th Dist.), citing *State v. Curtis*, 2018-Ohio-2822, ¶ 24 (5th Dist.).

### b. Findings of Fact and Conclusions of Law

{¶ 19} In his second assignment of error, Wood argues that the trial court erred by not making findings of fact and conclusions of law that discussed the substantive issues or the evidence offered in support of his claims. Wood contends that the trial court summarily denied his petition without addressing every claim raised. We do not agree.

{¶ 20} "The purpose of findings and conclusions are to apprise the petitioner of the grounds for the judgment of the trial court and to enable appellate courts to properly review the cause." *State v. Harris*, 1992 WL 190653, *5 (2d Dist. Aug. 13, 1992), citing *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19 (1988). "A trial court need not discuss

every issue raised by appellant or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion." *Calhoun*, 86 Ohio St.3d at 291-92, citing *State v. Clemmons*, 58 Ohio App.3d 45, 46 (2d Dist. 1989).

{¶ 21} "If the trial court finds, on the facts of a case, that a petitioner's claim was fully litigated at trial or upon appeal, or that the claim could have been fully litigated in an appeal, the court can summarily dismiss the claim as barred by res judicata." *State v. Lester*, 41 Ohio St.2d 51, 55 (1975). "The determination of whether an issue is barred by res judicata largely involves a perusal of the facts of record, turning on such matters as the issues raised at trial and upon appeal, the availability of evidence and witnesses, and the jurisdiction of the trial court." *Id.*

{¶ 22} Based on our review of the record, we conclude the trial court's judgment sufficiently apprised Wood of the bases for the denial of his petition: res judicata and failure to submit substantive grounds to warrant the relief requested. While a trial court must make its determination to grant or deny a petition for postconviction relief after considering "the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner," a trial court need not specifically address every item submitted by the petitioner. We also conclude that, for the reasons discussed below, the trial court did not abuse its discretion in denying Wood's petition without a hearing.

### c. Wood's Postconviction Claims

{¶ 23} When Wood filed his petition for postconviction relief, he submitted exhibits labeled A through M. These exhibits included an affidavit of Wood and documents related to other cases involving Wood that had nothing to do with the underlying charges. Exhibits A, E, and G. Exhibit B was a printout of information about Deputy McDuffie from the internet. Exhibit C was a printout of the case docket information for *Nolan v. Clark Cty. Bd. of Cty. Commrs.*, S.D. Ohio No. 3:21-cv-00330. Exhibit F was a screenshot showing the results of a Google search for "expired license suspended." Wood also included an article explaining the use of the word "F***" as well as a definition of "pig" and an article explaining the use of the word "pig" as slang for police. Exhibits H and I. Exhibits D and J were Google map printouts. Wood submitted an affidavit by Richard Gibson, an inmate in prison with Wood, for the proposition that Wood exhibited signs of post-traumatic stress disorder (PTSD). Exhibit K. Wood also included articles about police corruption. Exhibit L. Withdrawal check-out slips from LOCI (a prison) were included as Exhibit M, along with a purported letter from Daniel Harkins, who was apparently involved in a car crash in which Wood assisted Harkins after the crash, and three letters from the Ohio Attorney General's Office.

{¶ 24} One of the separately-filed affidavits of indigency included a 31-page affidavit of Wood in which he described his version of events leading to his arrest for OVI on April 22, 2021. A significant portion of Wood's affidavit contained argument and speculation. "[S]tatements contained in affidavits must be based on personal knowledge and cannot be legal conclusions." *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756 (2d Dist. 1991), citing *State v. Licsak*, 41 Ohio App.2d 165, 169 (10th Dist. 1974). *See also State*

*ex rel. Ware v. DeWine*, 2020-Ohio-5148, ¶ 19 ("when an affidavit contains legal arguments and conclusions, a court will disregard those statements.").

**{¶ 25}** To the extent Wood argues that the court failed to conduct a credibility determination of the affidavits submitted on behalf of Wood's petition in accordance with *Calhoun*, 86 Ohio St.3d 279, we see no error warranting reversal. In *Calhoun*, the Court held that "in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." *Id.* at 284. "The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." *Id.* In assessing the credibility of an affidavit, the Court put forth several factors a trial court may consider, including the following:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the

credibility of that testimony.

*Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756 (1st Dist. 1994).

**{¶ 26}** "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.* "Such a decision should be within the discretion of the trial court." *Id.* Nevertheless, "where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Id.* at 284.

**{¶ 27}** The affidavits submitted as exhibits to Wood's petitions included those of Richard Gibson and Wood. Gibson's affidavit indicated that he believed Wood showed signs of PTSD. This affidavit by a fellow inmate provided no support for any of Wood's claims and was therefore irrelevant. Wood's affidavit submitted as an exhibit was also entirely unrelated to the underlying facts and circumstances involved in this case and was inconsequential. Although the trial court did not list the factors it considered in reviewing Wood's affidavit attached to his affidavit of indigency, it is clear from the court's entry that it did not find Wood's affidavit credible, calling it a "self-serving statement that carries no weight." The judge who reviewed Wood's postconviction relief petition was the same judge who presided over the jury trial and sentencing hearing. The judge clearly found that Wood was interested in the outcome of his petition by calling it "self-serving." The trial court also noted that some of Wood's claims were "belied by the record." These findings reflect that the court considered the credibility of Wood's affidavit under *Calhoun*

and found it not credible. We conclude that the trial court considered the affidavits filed in support of Wood's petition and, in the sound exercise of its discretion, properly weighed their credibility. We now examine whether there were substantive grounds for relief for any of Wood's claims that would have warranted an evidentiary hearing on Wood's petition.

### i. First Claim: Audio/Video Evidence

{¶ 28} Although Wood's first claim discussed an allegation that the State suppressed or failed to preserve video evidence in terms of *Brady*, his actual argument was that the videos submitted into evidence at trial had been intentionally altered and that, "had the jury been informed that the evidence was maliciously altered, there is a reasonable probability of a different outcome sufficient to undermine the jury's verdict." Oct. 23, 2023 Petition p. 7. According to Wood's affidavit, the April 22, 2021 video recording that was admitted at trial had been altered and some statements had been edited out. Two videos were submitted at trial. The first video was Deputy McDuffie's body camera footage, which was admitted as State's Exhibit 10. At trial, Wood's counsel stated that "for the record we'll stipulate to the accuracy and authenticity of the tape and join in the motion to admit [it]." Trial Tr. 230. Moreover, when discussing the video, the following exchange occurred:

> [Prosecutor]: Okay. Deputy McDuffie, I've shown you what's been marked as State's Exhibit 10. *There were some edits and parts that were muted for evidentiary purposes* but does that video fairly and accurately depict the events that occurred on April 22nd, 2021 in the early morning of April 23rd, 2021?

[McDuffie]:   Yes.

(Emphasis added.) *Id.* at 232.

{¶ 29} Sergeant Chad Brown similarly testified about his body camera footage, which was admitted as State's Exhibit 11.   Portions of the video were played for the jury. Thereafter, the following exchange occurred:

[Prosecutor]: Now, there's been *some parts that I fast forwarded through some stuff* but is that a fair and accurate representation of what occurred on April 22nd and into the early morning of April 23rd, 2021?

[Brown]:   Yes.

(Emphasis added.)   Trial Tr. 281.

{¶ 30} No objections were made to the admission or presentation of the videos or portions of the videos played at trial.   Following the completion of the State's witnesses, a discussion was held regarding the admission of the State's exhibits.   Notably, defense counsel stated, "I have no objection to any of the exhibits *as long as the videos are redacted ones.*"   (Emphasis added.) *Id.* at 391.

{¶ 31} During Wood's allocution at sentencing, he claimed that the videos were edited during trial.   The State responded that "there were some parts edited out for evidentiary purposes."   Disposition Tr. 34.   The State explained that "Sergeant Brown and Deputy McDuffie were talking about the Defendant's prior OVI convictions which wouldn't have been admissible at court."   *Id.* at 35.

{¶ 32} Wood has presented no evidence outside the record to support an argument that any video in this case was improperly tampered with or edited.   Rather,

the record demonstrates that the parties agreed at the time of trial to redact certain portions of the videos for evidentiary reasons. Because Wood did not meet his initial burden to produce evidence demonstrating a cognizable constitutional error, the trial court did not abuse its discretion in denying his petition without conducting an evidentiary hearing on this claim. Moreover, because the record identified both the videos and redacted portions, Wood could have argued on direct appeal that the videos should not have been redacted. Accordingly, the trial court did not abuse its discretion in denying this claim because it was belied by the record and precluded by res judicata.

### ii. Second Claim: Ineffective Assistance of Counsel

{¶ 33} "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* Failure to satisfy either part of the ineffective-assistance-of-counsel test is fatal to the claim. *Strickland* at 697; *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). In the postconviction context, Wood was required to raise in his petition "a triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him." *State v. Bunch*, 2022-Ohio-4723, ¶ 37.

{¶ 34} When a defendant files a petition for postconviction relief and alleges ineffective assistance of counsel, "the petitioner typically bears the burden to submit documentary evidence containing sufficient operative facts to show deficient performance and prejudice." *State v. Henry*, 2019-Ohio-1256, ¶ 45 (2d Dist.), citing *State v. Cox*, 2015-Ohio-894, ¶ 8 (2d Dist.). "Where a defendant does not demonstrate how he was prejudiced by counsel's performance, he fails to establish substantive grounds for relief and his petition for postconviction relief may be denied without a hearing." *Id.*, citing *State v. Pianowski*, 2013-Ohio-2764, ¶ 31 (2d Dist.).

{¶ 35} In his petition, Wood raised five separate allegations of ineffective assistance of counsel, which can be categorized as follows: 1) failing to conduct pretrial investigation; 2) erroneously promising the jury that Wood would testify; 3) failing to object to statements of the prosecutor during trial; 4) failing to object to prejudicial jury instructions; and 5) requesting a jury trial rather than a bench trial. We will address each of Wood's claims.

### 1. Failure to conduct pretrial investigation

{¶ 36} In Wood's petition, he listed seven items that his trial counsel allegedly failed to investigate prior to trial. Besides listing the items, Wood did not submit documentary evidence to support a finding that counsel failed to conduct sufficient investigation into them that rose to the level of a constitutional violation resulting in prejudice. Nor did Wood submit any affidavits from his trial counsel explaining the steps he took or did not take to investigate Wood's case. Wood merely speculates as to what

such evidence would or could have been or what counsel allegedly failed to do. Wood is correct that res judicata does not necessarily operate to bar relief based on ineffective assistance of counsel even if similar claims were addressed on direct appeal. However, in those circumstances, the petitioner must submit competent evidence from outside the trial record, and that evidence must present substantive grounds for relief, that is, if believed, the newly-presented evidence, together with any evidence in the trial record, would establish that counsel was ineffective. *Blanton*, 2022-Ohio-3985, at ¶ 33.

{¶ 37} Contrary to Wood's contentions, he did not submit competent evidence from outside the record that "[c]ounsel ignored [him], failed to develop and present evidence material to [his] claims of innocence and misconduct and did so over [his] clearly expressed wishes." Appellant's Brief p. 11. Notably, Wood did not include the specifics of any conversation he had with his counsel about these pretrial issues or any other issues in his affidavit. "A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which are legally insufficient to rebut the record on review." *Gapen*, 2005-Ohio-441, at ¶ 21 (2d Dist.), citing *Kapper*, 5 Ohio St.3d at 38, and *Vanderpool*, 1999 WL 64238 (2d Dist. Feb. 2, 1999). In sum, the trial court did not err in concluding that Wood's claim lacked merit. The evidence submitted by Wood did not provide sufficient operative facts to demonstrate the lack of competent counsel or that Wood was prejudiced as a result.

### 2. Promising the jury Wood would testify

{¶ 38} Wood claimed that his attorney was deficient for promising the jury during

opening statements that Wood would testify at trial. According to Wood's petition, his attorney failed to investigate his criminal record prior to trial, and when the prosecutor threatened to use Wood's criminal history against him if he were to testify, Wood's attorney instructed Wood not to testify.

{¶ 39} To the extent Wood alleges that counsel's unfulfilled promise to the jury that Wood would testify was itself constitutionally ineffective assistance of counsel, this claim could have been raised on direct appeal and was therefore barred by res judicata. *See State v. West*, 2009-Ohio-6270 (2d Dist.) (considering on direct appeal whether counsel's promise to the jury that defendant would testify was ineffective assistance of counsel). The promise to the jury upon which Wood relied and his decision to decline to testify at trial were both in the trial transcript on direct appeal. Thus, the trial court did not abuse its discretion in denying this portion of Wood's petition based on res judicata.

{¶ 40} On the other hand, with respect to Wood's claim that counsel was ineffective for unreasonably instructing him not to testify after promising the jury that Wood would testify during opening statements, Wood failed to meet his burden of providing evidence outside the record to demonstrate a cognizable claim of constitutional error. According to Wood's petition, "the prosecutor said he would use my prior record to impeach and counsel *instructed* me not to testify, despite my willingness." (Emphasis in original.) Oct. 23, 2023 Petition, p. 9. Although argued generically in his petition, Wood's affidavit does not identify the purported conversation between him and his counsel. Instead, Wood alleges that he mailed a letter to his attorney "requesting a letter" to support Wood's allegations. However, Wood's affidavit further stated that he had not yet received a

response.

{¶ 41} Besides Wood's driving record, which included prior felony OVIs, no evidence of Wood's other criminal history, if any, is part of the record before us. The record reflects that defense counsel was aware of Wood's driving record and prior felony OVIs prior to the alleged off-the-record discussion that resulted in counsel's advising Wood not to testify at trial. Wood does not explain what, if anything, in his criminal record should have alerted his attorney prior to opening statements to recommend that he not testify. There is also no evidence to indicate that Wood's criminal record was the basis of counsel's recommendation for Wood not to testify. Without knowing what other criminal record Wood may have had that would have altered defense counsel's recommendation, i.e., a criminal history that his attorney failed to investigate, we cannot conclude that counsel's advice was not reasonable trial strategy. "The decision as to whether a defendant should testify is a matter of trial strategy. Defense tactics, even ineffective ones, are usually not considered grounds for reversal." *State v. Faulkner*, 1993 WL 125452, *3 (2d Dist. Apr. 22, 1993). Importantly, the ultimate decision of whether a defendant will testify on his own behalf is the defendant's, not counsel's, and only the defendant can waive that right. *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). The trial transcript reflects that Wood knowingly, intelligently, and voluntarily waived his right to testify. Trial Tr. 465-466.

{¶ 42} Wood failed to demonstrate sufficient operative facts to establish substantive grounds for relief. Therefore, the trial court did not abuse its discretion in denying this claim without a hearing.

### 3. Failing to object to prosecutor's statements at trial

**{¶ 43}** Wood's petition does not specifically identify what statements his attorney should have objected to during trial or how they prejudiced him, though it appears Wood was concerned with the prosecutor's statements during closing argument. We considered this issue in Wood's application for reopening; we concluded that there was nothing inappropriate or prejudicial about the State's statements and determined that Wood's argument lacked merit. Further, this issue could have been raised on direct appeal as it related directly to statements made during trial, which were part of the record on direct appeal. *Blanton*, 2022-Ohio-3985, at ¶ 40. Accordingly, this argument was precluded by res judicata.

### 4. Jury Instructions

**{¶ 44}** In his petition, Wood argued that counsel was ineffective for failing to object to prejudicial jury instructions. Because this issue could have been raised on direct appeal, as the jury instructions were part of the trial record, this argument was precluded by res judicata. *State v. Jamison*, 2009-Ohio-3515, ¶ 13 (2d Dist.).

### 5. Jury Waiver

**{¶ 45}** Finally, Wood claimed in his petition that counsel was ineffective because "[t]rial counsel failed to execute a jury waiver, thereby avoiding the danger of unfair prejudice by opting for a bench trial." Oct. 23, 2023 Petition, p. 11. According to Wood, "[t]here was no conceivable benefit to be derived from allowing this OVI case to be heard by a jury," and the case "should have never been tried before a jury." *Id.*

**{¶ 46}** A defendant in a serious criminal case has a constitutional right to be tried

by a jury. *State v. Robbins*, 176 Ohio St. 362, 363 (1964). Like other constitutional rights, the right to a jury trial may be waived. *State v. Pasqualone*, 2009-Ohio-315, ¶ 23. However, the decision to waive a jury trial belongs to the defendant, not counsel. *State v. Lawson*, 2021-Ohio-3566, ¶ 82. Thus, Wood's counsel could not have waived a jury for him. Wood did not introduce any evidence outside the record to support this claim, and therefore he could have raised this issue on direct appeal. This argument was barred by res judicata.

### iii. Third Claim: Witness Perjury

{¶ 47} In his third claim, Wood argued that some of the witnesses at trial perjured themselves. On appeal, Wood focuses his perjury argument on Deputies McDuffie and Brown. Wood argues that, based on his version of events, there was insufficient evidence that the officers had reasonable, articulable suspicion to conduct an OVI investigation or probable cause to arrest him. Wood also argued in his petition that all police lie and therefore the police in this case also lied. In support of this argument, Wood attached documents discussing police misconduct in general. Further, according to Wood's affidavit, his eyes were not bloodshot or glassy, there was no strong odor of alcohol coming from his car, person, or breath, and his speech was not slurred. Wood contends that his own version of events was correct and therefore the officers who testified must have lied at trial.

{¶ 48} In a lengthy analysis conducted in Wood's direct appeal, we concluded that the officers had reasonable suspicion to prolong the traffic stop to detain Wood to investigate for OVI and further that they had probable cause to arrest him for OVI. *Wood*,

2023-Ohio-2788, at ¶ 42, 49 (2d Dist.). Wood relies primarily on his version of events as set forth in his affidavit to support his claim. Generally, affidavits that are self-serving or conclusory, without more, submitted by a defendant in support of his or her claim for postconviction relief are insufficient to trigger the right to a hearing or to justify granting the petition under R.C. 2953.21. *State v. Perkins*, 2011-Ohio-5070, ¶ 15 (2d Dist.), citing *State v. Pierce*, 127 Ohio App.3d 578, 586 (11th Dist. 1998). *See also Kapper*, 5 Ohio St.3d at 38. Additionally, the other documents upon which Wood relied were not cogent evidence that entitled him to a hearing on his petition. The trial court denied this claim because it was without merit, belied by the record, and unsupported by any operative facts other than Wood's self-serving affidavit. We cannot conclude that the trial court abused its discretion in denying Wood's third claim without a hearing.

### iv. Fourth Claim: *Nolan* Case

**{¶ 49}** Wood argued in his petition that the State committed a *Brady* violation by failing to disclose that Deputy McDuffie was the subject of a federal civil lawsuit at the time of Wood's trial. On appeal, Wood argues that the trial court erred in finding that there was no *Brady* violation and also inappropriately relied on the prosecutor's statement in his response that he was not aware of the civil case at the time of Wood's trial. While we agree with Wood that the trial court should not have relied on the prosecutor's statement, which was not presented in the form of an affidavit, we nevertheless agree with the trial court that there was no *Brady* violation.

**{¶ 50}** In *Brady*, the Supreme Court of the United States held that a state violates the Fourteenth Amendment to the United States Constitution when it "withholds evidence

that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (summarizing the Court's holding in *Brady*, 373 U.S. 83). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). To prevail on a *Brady* claim, a defendant must show that "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985).

{¶ 51} The materiality of "suppressed evidence [is] considered collectively, not item by item." *Kyles* at 436. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97 109-110 (1976). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009), citing *Bagley* at 682.

{¶ 52} The duty of the State to disclose evidence encompasses both impeachment evidence and exculpatory evidence. *Strickler* at 280-281, citing *Bagley* at 676. To comply with *Brady*, the prosecution has a duty to learn of favorable evidence known to others acting on the State's behalf in the case, including the police. *Kyles* at 437. As a

result, *Brady* encompasses both willful and inadvertent suppressions of evidence by the State. *McNeal*, 2022-Ohio-2703, at ¶ 19, citing *Strickler* at 282.

{¶ 53} Wood's criminal case was tried by a jury on August 16, 2022. According to Wood's affidavit, he inadvertently discovered the filing of *Nolan v. Clark Cty. Bd. of Commrs.*, No. 3:21-cv-330, a wrongful death civil lawsuit filed in the United States District Court for the Southern District of Ohio. Deputy McDuffie, who testified at Wood's trial, was a named defendant in the civil lawsuit. Wood contends that, because McDuffie was a named defendant in a civil lawsuit, that information by itself was favorable to the defense, and he could have used it to impeach McDuffie at trial. Although unclear, it appears Wood discovered the *Nolan* case sometime in March 2023.

{¶ 54} There is no evidence in the record that the State suppressed evidence of the civil lawsuit. Wood made no effort to attribute knowledge of the federal civil lawsuit filed in the United States District Court for the Southern District of Ohio to the Clark County Prosecutor's Office. There was also no evidence that the prosecutor's office had knowledge of the existence of the civil lawsuit, had any involvement in the preparation for that case, or had any duty to discover the existence of the civil lawsuit. *See Clark*, 2009-Ohio-2101, at ¶ 15. Merely asserting in conclusory fashion that the State suppressed the evidence does not warrant a hearing on a petition for postconviction relief.

{¶ 55} Moreover, the fact that the lawsuit was a public record necessarily made the information available to Wood from sources other than the prosecution. Indeed, Wood claimed he discovered the information during his own internet research. "*Brady* does not apply when the information is available from another source, such as by looking

at public records." *State v. Barron*, 2023-Ohio-1249, ¶ 45 (12th Dist.), citing *Owens v. Guida*, 549 F.3d 399, 418 (6th Cir. 2008).  This is because "*Brady* does not apply to materials that are not 'wholly within the control of the prosecution.' "  *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003), quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).  Accordingly, we cannot conclude that the State suppressed evidence of the civil lawsuit, either purposefully or inadvertently, or that the lawsuit fell within the parameters of *Brady*'s requirements to disclose.

{¶ 56} Furthermore, Wood has not demonstrated that the evidence in question was *Brady* material.  The existence of the civil lawsuit was not material to Wood's guilt or punishment and was not relevant impeachment material.  In *Nolan*, Kenneth Nolan was arrested on November 20, 2019, following a traffic stop, and was booked into the Clark County Jail.  Deputy McDuffie, who was Nolan's booking officer, performed a pre-booking medical screen of Nolan.  Nolan self-reported that he had arthritis, a heart murmur, and was on gout medication.  Deputy McDuffie concluded, based on his observations, that Nolan did not appear to be under the influence of drugs or alcohol or to be experiencing symptoms of withdrawal.  Nor did Nolan appear to be suffering from a fever or infection or present any other medical problem.  Deputy McDuffie did not recall whether he had contacted the Medical Department or a shift supervisor for an on-site evaluation prior to placing Nolan in the general population.  After having some medical issues and being treated by a jail nurse on at least two occasions the following day, Nolan was taken to the hospital.  The doctors at the hospital were unable to determine the exact cause of Nolan's condition, and he was transferred on November 27, 2019, to the Ohio

State University Hospital in Columbus. Nolan died on November 29, 2019, from an infection of the heart and sepsis. The civil complaint alleged that Deputy McDuffie had acted recklessly during Nolan's initial medical screening by failing to consult medical staff prior to placing him in the general population. On May 6, 2024, McDuffie's motion for summary judgment was granted, and he was dismissed as a defendant in the lawsuit. *Nolan v. Clark Cty. Bd. of Cty. Comms.*, 2024 WL 1990799 (S.D. Ohio May 6, 2024).

{¶ 57} Wood contends that the fact that McDuffie was a named defendant in a civil wrongful death lawsuit would have been a proper basis on which to impeach McDuffie's credibility at trial. However, the fact that McDuffie was listed as a named defendant in a civil lawsuit had no bearing on McDuffie's character for truthfulness or untruthfulness and had no bearing on his credibility. The fact that an individual has been sued in an unrelated case is insufficient, by itself, to constitute *Brady* material. There is no reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different or that the evidence was sufficient to undermine confidence in the verdict. Because the evidence did not constitute material evidence so as to be considered *Brady* material, the trial court did not abuse its discretion in denying Wood's petition without a hearing on this claim.

### v. Fifth Claim: Prosecutorial Misconduct

{¶ 58} The prosecutorial misconduct alleged in Wood's fifth claim based on statements the prosecutor made during trial was precluded by res judicata, as that evidence was available in his direct appeal and could have been raised at that time. Moreover, Wood has not presented competent, relevant, and material evidence that the

prosecutor knowingly used perjured testimony. Wood's contention that he was not intoxicated on the night of April 22, 2021, which was his defense at trial, did not establish competent, relevant, and material evidence that the State knowingly used perjured testimony at trial. Indeed, a defendant cannot establish prosecutorial misconduct simply by filing a self-serving affidavit stating what he believes the facts were and then claiming that anyone who testified contrary to his version of the facts "must have" committed perjury. Such conclusory and speculative evidence did not meet the minimum level of cogency needed to properly support a petition for postconviction relief. Consequently, the trial court did not abuse its discretion in denying Wood's fifth claim without a hearing.

### vi. Sixth Claim: Actual Innocence

{¶ 59} Wood argued that he was "actually innocent" of the charges and therefore his petition should be granted. In support of his claim, Wood alleged that an "independent forensic expert analysis" would prove that the audio and video evidence was deliberately altered, and a "behavioral sequence expert" would establish "a behavioral finger-print to prove that [his] behaviors were impulsive, oppositional defiant and consistent by comparing other evidence and accounts, all proving that the presentation by the State was false and misleading." Oct. 23, 2023 Petition, p. 22. No expert report was submitted in support of his petition. Wood also stated that he had "already established, through the credible, uncontradicted expert testimony of Dr. Belloto" that the blood test results were inaccurate and should have been excluded at trial. Wood did not rely on any evidence outside the record to support his assertions; rather, he relied on testimony from his trial transcript and his belief that unidentified experts would support

his contentions. Because this argument, which was essentially a manifest weight of the evidence challenge, had been raised and rejected on direct appeal, his claim was precluded by res judicata. Moreover, his speculative claims regarding what an expert would find were not cogent evidence outside the record sufficient to warrant a hearing on his petition.

{¶ 60} In conclusion, upon the record before us, including all the supporting affidavits and other documentary evidence submitted in support of Wood's petition, the trial court reasonably concluded that Wood had not met his initial burden of demonstrating that there were substantive grounds for relief and, thus, an evidentiary hearing was not required. Wood's second assignment of error is overruled.

### III. Third Assignment of Error: Motion for Leave to File a Motion for New Trial

{¶ 61} Wood's third assignment of error states as follows:

The trial court abused its discretion, applied incorrect legal standards and erroneously denied Wood's pro se Motion for Leave to File a Delayed Motion for a New Trial in violation of Crim.R. 33 (A)(6), (B) and Due process of law guaranteed by the Fifth, Sixth and Fourteenth Amendment to the United States Constitution as well as comparable provisions of the Ohio Constitution.

{¶ 62} On October 19, 2023, Wood filed a motion for leave to file a motion for new trial. Wood acknowledged that his motion for a new trial was untimely and explained that his untimeliness was due to newly discovered impeachment evidence. According to

Wood, the new evidence that formed the basis of his motion for leave to file a motion for a new trial had been discovered in March 2023. The "new evidence" was that Deputy McDuffie, who testified at Wood's trial, was listed as a defendant in a civil wrongful death lawsuit, which had been filed in federal district court on November 29, 2021. Along with a memorandum of law, Wood attached the case information sheet of the *Nolan* case and his own affidavit.

{¶ 63} The trial court found that Wood's motion for a new trial was untimely and failed to show that he had been unavoidably prevented from discovering the alleged new evidence. The trial court further noted that the civil case was a matter of public record. It denied Wood's motion for a new trial without a hearing.

{¶ 64} "A trial court's ruling on a motion for leave to move for a new trial is reviewed for an abuse of discretion." *McNeal*, 2022-Ohio-2703, at ¶ 13. An "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157.

{¶ 65} Crim.R. 33(A)(6) provides that a defendant may file a motion for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." If the motion for new trial is made on account of newly discovered evidence, the motion "shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." Crim.R. 33(B). Failure to file the motion within 120 days after the verdict was rendered requires the defendant to first seek leave of court to file a delayed motion for a new trial. *State v. Harwell*, 2019-Ohio-

643, ¶ 16 (2d Dist.). To obtain leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from the discovery of the evidence upon which he or she must rely. Crim.R. 33(B). " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Thompson*, 2012-Ohio-4862, ¶ 7 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist. 1984). Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 66} "[U]ntil a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *State v. Bethel*, 2022-Ohio-783, ¶ 41, citing *State v. Brown*, 2011-Ohio-1080, ¶ 14 (8th Dist.). "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Hatton*, 2022-Ohio-3991, at ¶ 30.

{¶ 67} Wood was found guilty by a jury on August 18, 2022. Wood maintains that he was unavoidably prevented from discovering the federal civil lawsuit before the time

limitation prescribed in Crim.R. 33(B) had expired, because the State suppressed the evidence until after the 120-day time limitation had expired. Wood claims that because he established a prima facie showing that he was unavoidably prevented from timely moving for a new trial due to the State's suppression of the evidence, the trial court abused its discretion in denying him leave to file his motion for a new trial. We do not agree.

{¶ 68} There is no question here that Wood failed to file his motion within 120 days of the jury verdict. Consequently, he was required to show by clear and convincing evidence that he had been unavoidably prevented from timely discovering the evidence on which his motion relied. However, the evidence in question was not "new evidence," as the civil lawsuit was a matter of public record and evidence of its existence could have been discovered by exercising due diligence before trial or within the 120 days following the jury's verdict. *See State v. Clark*, 2009-Ohio-2101, ¶ 25 (12th Dist.). The civil lawsuit was filed on November 29, 2021. Wood's jury trial began on August 16, 2022, nine months after the civil lawsuit was filed. Not only has Wood failed to establish that his trial counsel did not have such information at the trial, but he has failed to give any reason why such information was unobtainable at that time, much less as a result of prosecutorial misconduct. The only evidentiary support for Wood's motion was his affidavit and a copy of a case information sheet of the *Nolan* case. In his affidavit, Wood stated in conclusory fashion that he had been unavoidably prevented from discovering the evidence until March 2023. Wood explained that he came across the case while researching his own federal civil lawsuit. No other facts were provided by Wood that

were based on personal knowledge and that did not constitute conclusory or legal arguments. *See State v. Pelfrey*, 2022-Ohio-721, ¶ 65-66 (2d Dist.) (an affiant is incompetent to testify in the form of an affidavit to any fact absent firsthand knowledge of that fact). Accordingly, Wood did not carry his burden to establish by clear and convincing evidence that he had been unavoidably prevented from timely filing the motion for a new trial or discovering the "new evidence" within the time provided under Crim.R. 33(B).

**{¶ 69}** Nevertheless, Wood relies heavily on the Supreme Court of Ohio's holding in *State v. McNeal*, 2022-Ohio-2703, to support his position. Wood's reliance on *McNeal* is misplaced. Under *McNeal*, "a defendant may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) by establishing that the prosecution suppressed the evidence on which the defendant would rely in seeking a new trial." *Id*. at ¶ 17, citing *Bethel,* 2022-Ohio-783, at ¶ 25, 59. However, as explained above in our resolution of Wood's fourth assignment of error, the record does not reflect that Wood's purported new evidence was either suppressed by the State or constituted *Brady* material.

**{¶ 70}** Based on this record, we conclude that the trial court did not abuse its discretion in finding that Wood had failed to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the alleged newly discovered evidence. Wood's third assignment of error is overruled.

## IV.    First Assignment of Error: Consideration of State's Responses

**{¶ 71}** Wood's first assignment of error states as follows:

> The trial court abused its discretion, refused to acknowledge Wood's

*pro se* Motions to Strike invalid state responses to pro se Post-conviction motions and gave undue consideration to the invalid responses from the State, which should have been disregarded as void and stricken from the record, in violation of Due process of law guaranteed by the Fifth, Sixth and Fourteenth Amendment to the United States Constitution as well as comparable provisions of the Ohio Constitution.

{¶ 72} Wood contends that the trial court abused its discretion in considering the State's untimely responses to Wood's motion for leave to file a motion for a new trial and his petition for postconviction relief, and then gave those responses undue consideration, which violated his right to due process. We do not agree.

{¶ 73} Regarding his motion for leave to file a motion for a new trial, the burden was on Wood to establish by clear and convincing proof that he had been unavoidably prevented from discovering the evidence upon which he relied. Although Wood made an allegation that he had been unavoidably prevented from discovering the *Nolan* case until March 2023, as we explained above, the *Nolan* case was not *Brady* material, and Wood did not establish by clear and convincing proof that he was unavoidably prevented from discovering it. Notably, the State submitted no evidence in response to Wood's motion and merely argued the applicable law. Because Wood did not satisfy his burden, even if the court had not considered the State's response, the outcome would not have changed. With respect to harmless error, Crim.R. 52(A) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Because any error in considering the State's response was harmless, Wood's assignment

of error fails in this respect.

{¶ 74} We also conclude that the trial court did not abuse its discretion in considering the State's untimely response to Wood's petition for postconviction relief. As explained in detail in our resolution of the second and fourth assignments of error above, Wood's claims for relief were without merit. Nothing in the record suggests that the trial court would not have reached the same decision in the absence of the State's untimely response to Wood's petitions. "Because the trial court has an independent obligation to analyze the petition under R.C. 2953.21(D), any error in allowing the State's response would be harmless." *Marcum*, 2023-Ohio-4058, at ¶ 22 (2d Dist.). Wood has failed to demonstrate that his substantial rights were affected by the trial court's consideration of the State's response. Therefore, his first assignment of error is overruled.

## V. Fifth Assignment of Error: Motion for Appointed Counsel

{¶ 75} Wood's fifth assignment of error states as follows:

The trial court abused its discretion by denying Wood's pro se Motion For Appointment of Counsel in violation of R.C. 120.16(A)(1), (D) and Due process of law guaranteed by the Fifth, Sixth and Fourteenth Amendment to the United States Constitution as well as comparable provisions of the Ohio Constitution

{¶ 76} On October 23, 2023, Wood filed a motion to appoint counsel from the State Public Defender's Office to represent him on his petition for postconviction relief. The trial court overruled Wood's motion.

{¶ 77} "[A]n indigent petitioner has neither a state nor a federal constitutional right

to be represented by an attorney in a postconviction proceeding." *State v. Crowder*, 60 Ohio St.3d 151, 152 (1991). Where, however, a trial court finds that a petitioner is entitled to a hearing on a petition for postconviction relief, R.C. 120.16(A)(1) and (D) implicitly require the trial court to promptly notify the public defender of the pending hearing. *Id.* at paragraph two of the syllabus. "Pursuant to R.C. 120.16(D), the public defender may, within his discretion, represent or refuse to represent an indigent petitioner seeking post-conviction relief." *State v. Simons*, 2013-Ohio-3654, ¶ 35 (2d Dist.), citing *State v. Beane*, 1995 WL 472153 (2d Dist. Aug. 9, 1995).

{¶ 78} "[A] trial court's duty to notify the public defender's office of the pendency of a petition for post-conviction relief only arises when, and if, the petition is scheduled for an evidentiary hearing." *State v. Singleton*, 2006-Ohio-4522, ¶ 30 (2d Dist.), citing *Crowder* at 153. Because the trial court reasonably found that Wood was not entitled to an evidentiary hearing on his petition for postconviction relief, the court had no duty to notify the public defender's office or to appoint counsel. *State v. Beechler*, 2017-Ohio-1385, ¶ 43 (2d Dist.). Wood's fifth assignment of error is overruled.

## VI. Conclusion

{¶ 79} Having overruled all of Wood's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . .

TUCKER, J. and HANSEMAN, J., concur.